UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| THOMAS P. BRICHETTO, JR.<br><br>v.<br><br>UNITED STATES OF AMERICA, | Civil No. 06-57-P-C<br>Criminal No. 03-24-P-C |

Gene Carter, Senior District Judge

**ORDER DENYING MOTION TO VACATE, SET ASIDE,**
**OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**

On December 12, 2001, Thomas P. Brichetto, Jr., along with Jeffrey S. Hall, Dean A. Lakin, and David Tanguay, robbed a branch of the Gorham Regional Federal Credit Union in Gorham, Maine of $7,079 at gunpoint. The jury convicted Brichetto of armed robbery of a federally insured financial institution, and of carrying a firearm during a crime of violence. However, the jury found him not guilty of being a felon-in-possession of a firearm. The court imposed a prison term of 300 months for armed robbery of a financial institution, and a consecutive term of 84 months for carrying a firearm during the commission of a crime of violence. Brichetto appealed to the First Circuit and his conviction was affirmed. Brichetto has now filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. *See* Docket Item No. 1.

Having presided at trial and sentenced Brichetto and his three codefendants in the case, the Court is quite familiar with the facts of the case and finds it unnecessary to

recite them in detail here. The Court will, therefore, move directly to the legal issues raised in Brichetto's petition.

## I. DISCUSSION

The Court of Appeals for the First Circuit has made it clear that jurisdiction under 28 U.S.C. § 2255 is limited to issues of constitutional or jurisdictional dimension. *See David v. United States*, 134 F.3d 470 (1st Cir. 1998) (noting that § 2255 is limited to constitutional, jurisdictional or miscarriage of justice claims); *Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994). Errors not falling into either category may be litigated on collateral challenge only if the claimed error is "a fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428 (1962). Brichetto contends that he is entitled to habeas relief based on errors made by the Court, the prosecutor, and defense counsel. The court will consider each category in turn.

### A. Court Errors

Brichetto claims that the Court committed multiple errors in the course of his trial and sentencing. Specifically, Brichetto seeks relief on the following grounds: (1) the Court improperly limited cross examination of David Tanguay; (2) the Court erroneously determined that Dean Lakin was unavailable; (3) the Court failed to properly instruct the jury on uncorroborated accomplice testimony; (4) the Court erroneously determined that prior convictions were crimes of violence and not submitting the question to the jury; (5) error in the Court "weighing evidence in deciding a motion for acquittal or new trial"; (6) the probation officer's use of the 2001 edition of the United States Sentencing Guidelines; and (7) error in the enhancement of the offense level for making a threat.

Brichetto could have, but did not, raise any of these claims in his direct appeal. *See David*, 134 F.3d at 474 (noting that § 2255 "is not a surrogate for a direct appeal"). Issues that could have been raised on direct appeal cannot be saved for a later collateral challenge. *See United States v. Frady*, 456 U.S. 152, 165 (1982). Brichetto fails to explain why he did not present these claims to the Court of Appeals for the First Circuit on his direct appeal, nor does he mention how he was prejudiced by his failure to appeal these claims. In addition, Brichetto does not make any arguments under the "fundamental miscarriage of justice" exception to procedural default, namely, that he is actually innocent. *See Schlup v. Delo,* 513 U.S. 298, 321 (1995); *Burks v. Dubois*, 55 F.3d 712, 717 (1st Cir. 1995). Brichetto fails to argue, let alone establish, any exceptions to his procedurally defaulted claims. Accordingly, the Court does not find that any of these claims of error are cognizable under § 2255.

### B. Prosecutorial Misconduct

Brichetto also contends that conduct by the prosecutor warrants granting his § 2255 petition. Specifically, he seeks relief on the following grounds (1) that the prosecutor implied in closing argument that he was fleeing; (2) that in closing argument the prosecutor vouched for a government witness; (3) that in closing argument the prosecutor made comments that were not supported by the evidence and which contradicted a stipulation; (4) the prosecutor referred in closing argument to the black knit hat; and (5) that the indictment was prejudicial because it included prior convictions. As with his claims of Court error, these are all non-constitutional claims that could have been raised on direct appeal. Accordingly they cannot be advanced for the first time on

collateral challenge absent exceptional circumstances and Brichetto has advanced no exception for his procedural default. *See Knight*, 37 F.3d at 772.

Two grounds of Brichetto's prosecutorial misconduct claim raise constitutional challenges: (1) the government delayed in bringing the case; and (2) the government violated his right to a speedy trial. With respect to Brichetto's claim that his Fifth Amendment rights were violated because the Government unnecessarily delayed in bringing the case, the Court is not satisfied that there was any misconduct. The charged offense occurred on December 12, 2001. The Indictment was returned on April 30, 2003, approximately one year and five months after the offense – well within the statute of limitations. *See* 18 U.S.C. § 3282. The statute of limitations is the "primary guarantee" that there was no undue delay between the commission of the crime and the bringing of charges. *United States v. Ewell*, 383 U.S. 116, 122 (1966). While delay before arrest on an indictment may give rise to a due process claim even if the charges were brought within the applicable statute of limitations, *United States v. MacDonald*, 456 U.S. 1, 7 (1982), the defendant must establish that "the pre-indictment delay . . . caused substantial prejudice to [his] rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." *United States v. Marion*, 404 U.S. 307, 324-25 (1971). Brichetto has failed to meet his burden on this issue.

Brichetto further claims that he was not tried within 70 days as required under the law. *See* 18 U.S.C. § 3161(c)(1). This claim is also not supported by the record. Brichetto was arraigned on the Indictment on May 16, 2003. *See* Docket Item No. 6. Speedy trial exclusion orders were entered covering the period from June 6, 2003 through August 31, 2003. *See* Docket Items Nos. 12, 18. Brichetto then filed a Motion to

4

Suppress on September 2, 2003, which remained pending until December 3, 2003. *See* Docket Item Nos. 22, 52. The jury was selected on December 1, 2003. *See* Docket Item No. 51. Since during the period of time between arraignment and jury selection only 15 days of non-excludable time ran, there was no speedy trial violation. *See United States v. Richardson*, 421 F.3d 17, 27-31 (1st Cir. 2005); *United States v. Salimonu*, 182 F.3d 63, 67-69 (1st Cir. 1999). While compliance with the Speedy Trial Act does not necessarily mean that Brichetto's Sixth Amendment right to a speedy trial was not violated, there is no evidence that would support such a claim. The Court must consider the following four factors to determine if Brichetto's Sixth Amendment right to a speedy trial were violated: "(1) length of delay; (2) reason for delay; (3) defendant's assertion of his right; and (4) the prejudice to defendant." *Salimonu*, 182 F.3d at 69. The delay in this case was not particularly lengthy, the reasons for delay were principally the pendency of motions filed by Brichetto, Brichetto failed to assert his speedy trial right prior to trial and he has now failed to identify any specific prejudice resulting from the delay. Accordingly, Brichetto's claim that his Sixth Amendment rights were violated fails. *See id*.

### C. Ineffective Assistance of Counsel

Brichetto's ineffective assistance of counsel claims are properly brought for the first time in the instant § 2255 motion. The essence of an ineffective assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect. *See Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986). To establish constitutionally ineffective assistance of counsel, Brichetto must show (1) his attorney's performance "fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668,

5

688 (1984), and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different." *Id.* at 694. In conducting the ineffective assistance inquiry, a "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (citation and quotation omitted). In reviewing a claim of ineffective assistance, the court should be careful not to second guess an attorney's trial strategy. Under the prejudice prong, Brichetto must establish prejudice by a "reasonable probability." *Id*. at 694. If Brichetto fails to make a proper showing under one of the *Strickland* prongs, the Court need not consider the other. *Id*. at 697.

### 1. Trial

Brichetto claims that his counsel was ineffective at trial for: (1) failing to call codefendant Dean Lakin as a witness; (2) failing to object to the admission of the black knit hat; (3) stipulating to the fact that the bank was federally insured; and (4) failing to object to inconsistent verdicts. He further claims that counsel was ineffective at sentencing for (1) failing to properly figure criminal history points; and (2) failing to object to career offender status. In this case, the record shows that each of Brichetto's challenges to his counsel's performance fails the *Strickland* test.

Brichetto claims that his attorney should have called his codefendant Lakin as a witness in light of the fact that defense counsel allegedly had a letter from Lakin that stated that Government witness Tanguay was not telling the truth about Brichetto's involvement in the robbery. Attached to Brichetto's § 2255 petition is a letter that is dated October 1, 2003, and that he claims was written by Lakin and sent to Brichetto's

counsel.  Appendix B attached to Motion to Vacate, Set Aside or Correct Sentence.  The letter, Brichetto suggests, states that Tanguay was lying and that Brichetto was not involved in the robbery.  Even assuming the letter stated that Brichetto was innocent, Defense counsel's decision not to call Lakin cannot be properly characterized as ineffective.

An attorney's decision not to call a witness at trial is the result of a strategic decision that is generally not subject to review.  In this case, almost a year before the trial, Lakin entered a guilty plea.  During Lakin's Rule 11 proceeding, he admitted his involvement in the robbery and identified Brichetto as a participant in it.  Again during his sentencing hearing, Lakin again made a statement that identified Brichetto as a participant in the robbery.  At Brichetto's trial, Lakin was questioned outside the presence of the jury.  At that time, Lakin indicated that he did not agree with the prosecution's version of the offense to which he had previously pled guilty.  Both the Government and the Court concluded that Lakin was committing perjury during the voir dire.  It is likely that Lakin's credibility would have been thoroughly impeached had defense counsel called him to testify before the jury.  In addition the testimony he gave during his voir dire was not that Brichetto was not involved in the bank robbery, but rather that Lakin could not recall if Brichetto was there or not because he was "in and out of alcohol and medication."  Accordingly, defense counsel's choice not to call Lakin was certainly a reasonable, tactical decision.  *See Strickland*, 466 U.S. at 689.

Brichetto next criticizes his trial attorney for not objecting to the admission of the black knit hat.  Brichetto relies on a non-jury stipulation as evidence that his attorney failed to object to the admission of the hat.  Appendix E attached to Motion to Vacate,

7

Set Aside or Correct Sentence.  That stipulation, which was signed by both Brichetto and his attorney, reflects that the defense agreed in advance of trial not to object to the admission of the hat on the grounds of inadequacy of chain of custody.  *Id*.  Brichetto has not provided any evidence in support of his claim that would suggest that there was any problem with the chain of custody of the hat that would have made it inadmissible.  Moreover, to the extent that Brichetto's argument can be understood to suggest that his attorney should have objected to the admissibility of the hat on relevance grounds, his argument is not supported by the record.  The black knit hat was plainly relevant.  It was found in the get-a-way car and matched the testimonial description of a hat worn by one of the robbers.  A portion of the hat's inside band was taken to a laboratory for DNA testing.  Laboratory analysis of DNA discovered on the hat band showed that it matched Brichetto's DNA.

Likewise, no fault can be found for the defense attorney's stipulation that the Gorham Regional Federal Credit Union "was insured by the National Credit Union Administration through the National Credit Union Share Insurance Fund."  Tr. at 565 (Docket Item No. 126).  Brichetto has not provided any evidence that that was not true or that the Government would have had any difficulty proving the federally insured status of the Credit Union.  Since Brichetto's argument on this point is unsupported by any facts, the Court concludes that defense counsel's agreement to the stipulation was a reasonable exercise of professional judgment.

Brichetto's claim that his attorney was ineffective because he failed to object to inconsistent verdicts is also without merit.  At trial, the jury found Brichetto guilty of armed robbery of a federally insured credit union, 18 U.S.C. §§ 2113(a), 2113(d), and 2

(Count I), use of a firearm in the commission of the robbery, 18 U.S.C. § 924(c)(1)(A)(ii) (Count II), and not guilty of being a felon in possession of a firearm, 18 U.S.C. §§ 922(g)(1) and 924(e) (Count III).  The Court finds no inconsistency between the jury's verdicts.  Based on the evidence presented at trial, it is likely that the jury determined that the government did not prove that element of Count III requiring that the firearm used in the robbery be connected with interstate or foreign commerce.  The issue of inconsistent verdicts was argued by Brichetto in his direct appeal and rejected by the Court of Appeals for the First Circuit.  *United States v. Brichetto*, 121 Fed. App'x  876 (1st Cir. 2005).  Because there is ample evidence in the record to allow a jury to find Brichetto guilty beyond a reasonable doubt on Counts I and II and that evidence does not implicate the evidence proffered to support the interstate nexus element necessary to have found Brichetto guilty on Count III, 18 U.S.C. §§ 922(g)(1) and 924(e), the Court is satisfied that it was reasonable for defense counsel not to object to the verdicts on the ground that they were inconsistent.

### 2. Sentencing

Brichetto claims that his trial attorney miscalculated his criminal history both in the plea negotiation phase and at sentencing.  Since Brichetto was found to be a career offender and under U.S.S.G. § 4B1.1 and the criminal history category for all career offenders is Category VI, defense counsel's calculations based on defendant's actual criminal history is irrelevant.  Brichetto also claims that his attorney erred by not arguing that his Maine burglary conviction was not a crime of violence and, therefore, not a predicate crime under the career offender guideline.  The law is clear that a conviction under the Maine burglary statue is a crime of violence.  *See United States v. Rodriguez*,

9

311 F.3d 435, 438-439 (1st Cir. 2002)(conviction under Maine burglary statute is a crime of violence). Thus, there was no basis upon which counsel could have challenged Brichetto's prior Maine burglary convictions.

Brichetto further argues that counsel failed to object to certain convictions on the ground that they were too old to be counted. Brichetto fails to specify which convictions should not have been counted. However, this argument is without merit given that none of Brichetto's convictions were too old and all were properly counted. According to the presentence report, Brichetto had five prior convictions that constituted predicates for the application of the career offender guideline. *See* PSR ¶ 21. Only two prior predicate convictions are required. *See* U.S.S.G. § 4B1.1. United States Sentencing Guideline § 4A1.2(e) provides:

> [a]ny prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period.

U.S.S.G. § 4A1.2(e). Furthermore, any term of revocation imposed must be added on to the original sentence. *See* U.S.S.G. § 4A1.2(k). The offense in this case occurred on December 12, 2001. Thus, any offense imposed after December 12, 1986 counts, as well as offenses where Brichetto was serving a sentence during that period of time. Brichetto was sentenced on the oldest of the convictions on April 2, 1987 to three years in prison, all but four months suspended. His probation was revoked in that case and he was sentenced to two years on the revocation on April 13, 1988. *See* PSR ¶ 28. Each of the other convictions is more recent and clearly falls within the time period counted under the

guidelines. *See* PSR ¶¶ 29-34. Therefore, there would have been no basis for counsel to object to the age of Defendant's predicate convictions.

Finally, Brichetto argues that his attorney should have objected to two of the five convictions being counted as separate offenses since he received concurrent sentences. The Court notes that even if the two offenses should have been counted as one, Brichetto had three other qualifying convictions, and he would still have been sentenced as a career offender. Moreover, the standard is not whether he received concurrent sentences but whether they were "related cases" within the meaning of U.S.S.G. § 4A1.2(a)(2). Brichetto has not provided anything to support a finding that the two offenses were related.

### 3. Direct Appeal

The *Strickland* standard also applies to a claim of ineffective assistance by appellate counsel. *See Smith v. Murray*, 477 U.S. 527, 535-36 (1986)(applying *Strickland* to claim of attorney error on appeal). To meet the standard in the appellate context,

> [Defendant] must first show that his counsel was objectively unreasonable, *see Strickland*, 466 U.S., at 687-91, in failing to find arguable issues to appeal – that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them. If [Defendant] succeeds in such a showing, he then has the burden of demonstrating prejudice. That is, he must show a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal. *See id.*, at 694, (defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

*Smith v. Robbins*, 528 U.S. 259, 285-85 (2000).

Applying this standard to Brichetto's claims that appellate counsel failed to raise some of the issues he now asserts, Brichetto has not shown that he now raises non-frivolous issues, nor has he shown that he would have prevailed on any such issues had they been asserted on direct appeal. Therefore, Brichetto has not shown ineffective assistance of appellate counsel. *See Palmer v. United States*, 46 Fed. App'x 5 (1st Cir. 2002)(Court rejected defendant's claim of ineffective appellate counsel, finding that "defendant failed to make the requisite showing that a particular nonfrivolous issue was clearly stronger than issues that counsel did present.")(*citing Smith*, 528 U.S. at 288).

Accordingly, there is no merit to Brichetto's Sixth Amendment challenge to the performance of his attorney at either trial or on appeal.

Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 is hereby **DENIED**.

/s/ Gene Carter
Gene Carter
Senior District Court Judge

Dated at Portland, Maine this 8th day of December, 2006.